# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 15-3962

———————————————

Lott Johnson

*Plaintiff - Appellant*

v.

Sonny Perdue,[1] Secretary, Department of Agriculture; Mark Petty; Linda Newkirk;
James Culpepper, III; Hendra Woodfork; Chana Thompson; John and Jane Does

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

——————————

Submitted: January 11, 2017
Filed: July 6, 2017

——————————

Before SMITH, Chief Judge, KELLY, Circuit Judge, and SIPPEL, District Judge.[2]

——————————

KELLY, Circuit Judge.

——————————

[1]Sonny Perdue has been appointed to serve as Secretary of the United States
Department of Agriculture, and is substituted as respondent pursuant to Federal Rule
of Appellate Procedure 43(c).

[2]The Honorable Rodney W. Sippel, Chief United States District Judge for the
Eastern District of Missouri, sitting by designation.

Lott Johnson is an African American farmer who operates and manages 79 acres of farmland in Lonoke County, Arkansas. He brings claims against the Secretary of the United States Department of Agriculture (USDA) and five USDA employees, alleging racial discrimination, retaliation, and conspiracy regarding his loan applications, servicing requests, and the application of administrative offsets to collect on a defaulted loan. The district court dismissed the complaint with prejudice, and this appeal followed. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

This is the third time Johnson has brought claims alleging the USDA discriminated and retaliated against him with regard to his loans. In 2010, Johnson filed a complaint with the USDA's Office of the Assistant Secretary for Civil Rights (the Office). In a Final Agency Decision under 7 C.F.R. § 15d and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq., the Office found that Johnson proved the USDA racially discriminated against him when it withdrew his Farm Service Agency (FSA) loan application, delayed processing his FSA loan application and servicing requests, and denied him primary loan servicing. It also found the USDA retaliated against him based on a prior discrimination complaint he filed with the Office when it improperly accelerated his outstanding debt and withdrew his loan application. The Final Agency Decision denied several other retaliation claims based on Johnson's prior discrimination complaint, all of his retaliation claims based on his status as a <u>Pigford</u> claimant,[3] and one additional race discrimination claim. The Office awarded Johnson $13,440 in economic damages; $35,000 for stress, humiliation, and depression; and $9,780 in debt relief on his FSA loans.

_____

[3]In 2001, Johnson was a prevailing plaintiff in the class action <u>Pigford v. Glickman</u>, 206 F.3d 1212 (D.C. Cir. 2000), which alleged that the USDA racially discriminated in its allocation of farm loans between 1983 and 1997, <u>id.</u> at 1214.

In 2012, Johnson filed a complaint in federal court and ultimately named the Secretary and five USDA employees as defendants (hereinafter, Johnson I). Like his complaint with the Office, his amended federal complaint was based on alleged discrimination and retaliation in loan applications, loan servicing requests, and application of administrative offsets. The district court dismissed the claims against the Secretary based on res judicata due to the Office's Final Agency Decision; and dismissed the claims against the individual defendants for failure to effect timely service, preclusion by the Office's comprehensive remedial scheme, and failure to state a claim. The court entered final judgment, dismissing the case without prejudice, in September 2014. Johnson initially appealed the judgment, but later voluntarily dismissed the appeal, choosing to refile his claims instead.

On March 23, 2015, Johnson refiled his amended federal complaint with minor changes concerning the dates of the alleged wrongful actions and adding conspiracy allegations (hereinafter, Johnson II). The complaint was filed against the Secretary of the USDA and the same five USDA employees—Mark Petty, Linda Newkirk, James Culpepper, III, Hendra Woodfork, and Chana Thompson—all in their official and individual capacities. It stated claims for violations of the ECOA; violations of due process, equal protection, and retaliation under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); and conspiracy pursuant to 42 U.S.C. § 1985(3). The defendants moved to dismiss and the district court granted the motions, concluding the the ECOA claims were barred by res judicata based on the Office's Final Agency Decision; the ECOA claims were barred by collateral estoppel due to Johnson I's resolution of the res judicata issue; the Bivens claims were precluded by the Office's comprehensive remedial scheme; the Bivens claims against defendants in their official capacity were barred by sovereign immunity; the claims against the Secretary in his individual capacity were insufficiently pleaded; and the conspiracy claim was insufficiently pleaded. The district court dismissed the complaint with prejudice and this appeal followed.

As to the Secretary, Johnson appeals only the dismissal of his ECOA claim. As to the individual defendants, Johnson appeals the dismissal of his ECOA claims, his Bivens claims against them in their individual capacities, and his conspiracy claim.

## II. Discussion

We review the district court's grant of a motion to dismiss de novo. See Laase v. Cty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011). Johnson argues the district court improperly transformed defendants' motions to dismiss into motions for summary judgment by considering a document outside the pleadings, namely the Office's Final Agency Decision. The district court properly considered the Final Agency Decision because it is embraced by the allegations in the complaint, is a matter of public record, and its authenticity has not been questioned. See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleading" and "include documents whose contents are alleged in a complaint and whose authenticity no party questions" (internal quotations omitted)); see, e.g., Johnson v. Vilsack (Curtis Johnson), 833 F.3d 948, 951 n.4 (8th Cir. 2016) (approving of the district court's consideration of the Office's Final Agency Decision on a motion to dismiss).

### A. ECOA Claims

#### 1. Preclusion

The district court dismissed Johnson's ECOA claims against all defendants as barred by res judicata based on the Office's Final Agency Decision, or, in the alternative, by collateral estoppel based on the Johnson I court's resolution of the same res judicata issue. Johnson appeals both conclusions.

-4-

After the district court entered judgment in Johnson II, we issued our decision in Curtis Johnson. Like Johnson here, Curtis Johnson received a partially favorable decision from the Office pursuant to a complaint alleging that FSA's denials of his debt settlement applications were racially discriminatory. 833 F.3d at 952–53. He subsequently filed a lawsuit in federal court stating ECOA, Bivens, and conspiracy claims against the Secretary and eleven USDA employees, many of whom are defendants in the present action. Id. at 953. The district court dismissed the ECOA claims in part on the grounds that they were precluded by the Office's administrative proceedings. Id. We reversed, concluding that "a final agency decision by the USDA resolving a complaint under 7 C.F.R. Pt. 15d using the administrative procedures currently in effect does not result in claim preclusion." Id. at 958. We reached this decision after reviewing the Office's procedures and finding that there was no opportunity for discovery, "no procedure for questioning evidence submitted by the opposing party, much less an evidentiary hearing," and "no avenue for seeking judicial review of [the Office]'s final decisions." Id. at 955. We found that these procedures were "too bare bones to bar future federal-court litigation." Id. at 957.[4]

In light of Curtis Johnson, we cannot agree with the district court's conclusions that Johnson's ECOA claims are barred by res judicata and collateral estoppel. As to res judicata, the Secretary and individual defendants argue that Johnson's ECOA claims were properly dismissed because res judicata bars relitigation of the claims previously decided by the Office. After the parties in this case completed briefing the issue, Curtis Johnson established that the Office's Final Agency Decision on Johnson's ECOA claim does not bar his subsequent federal ECOA claim. Id. at 958.

---

[4]The Office's decision on Lott Johnson's administrative complaint was issued on the same day as its decision on Curtis Johnson's complaint. See Curtis Johnson, 833 F.3d at 952. There is no evidence in the record that Lott Johnson was subject to different or additional procedures than those in Curtis Johnson.

Only the Secretary pursues the argument that collateral estoppel bars Johnson's ECOA claim because the res judicata issue was actually litigated and decided in Johnson I.[5] See Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007) (setting out the elements of collateral estoppel as requiring, *inter alia*, that the issue was "actually litigated in the prior action" and was "determined by a valid and final judgment" (quoting Anderson v. Genuine Parts Co., 128 F.3d 1267, 1273 (8th Cir. 1997))). However, given our subsequent decision in Curtis Johnson, the Secretary's argument cannot prevail because "collateral estoppel extends only to contexts in which . . . applicable legal rules remain unchanged." Montana v. United States, 440 U.S. 147, 158 (1979) (internal quotation omitted); accord Ginters v. Frazier, 614 F.3d 822, 827 (8th Cir. 2010). At the time of Johnson I, it was still an open question in this circuit whether a Final Agency Decision by the Office could have res judicata effect, and the district court there decided such preclusion was permissible. Subsequently, in Curtis Johnson, we stated that a decision by the Office could not bar subsequent federal litigation. 833 F.3d at 958. This change in the applicable legal rules prevents the application of collateral estoppel in the present case. See Ginters, 614 F.3d at 827 (holding that collateral estoppel did not apply where an intervening Supreme Court decision "constitute[d] a significant change in controlling legal principles"). We certainly do not fault the Johnson II court for applying collateral estoppel to the Secretary, as it had no way to know of our forthcoming decision in Curtis Johnson. Nonetheless, "we find it would not be in the interest of judicial economy" to remand this case back to the district court in order for it to "consider the recent change in controlling principles of law." Id.

Accordingly, we reverse the district court's conclusions that Johnson's ECOA claims are barred by res judicata and collateral estoppel.

---

[5]The individual defendants do not raise the collateral estoppel argument. In any event, collateral estoppel could not apply to them because they did not litigate the res judicata issue in Johnson I, and the district court expressly declined to resolve its applicability to them.

## 2.    Failure to State a Claim

The individual defendants alternatively argue that Johnson's ECOA claim was properly dismissed because he failed to allege all necessary elements. The district court did not reach this argument. Because the issue was fully briefed, addresses a pure question of law, and, like the preclusion question, is resolved by Curtis Johnson, we take up the individual defendants' alternative argument that the ECOA claim is insufficiently pleaded. See Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm of Adjustment, 558 U.S. 67, 79 (2009) (court may address an "alternative ground" when it "presents a pure question of law that th[e] Court can and should resolve without need for remand" (alternation in original) (internal quotation omitted)); Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 936 (8th Cir. 2012) ("Whether a complaint states a cause of action is a question of law which we review on appeal de novo.").

The individual defendants argue that the complaint fails to sufficiently allege that any of them qualifies as a "creditor" under the ECOA. A "creditor" is defined in the ECOA as "any person who regularly extends, renews, or continues credit," including any person who "arranges for" or "participates" in such credit decisions. 15 U.S.C. § 1691a(e). The ECOA's implementing regulations further define a creditor as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(l). Addressing several of the same defendants, Curtis Johnson found that allegations identical to those here were sufficient. 833 F.3d at 958. "We think it can fairly be inferred from their job titles" as "a Farm Loan Manager, a Farm Loan Officer, or a Farm Loan Chief" that four of the individual defendants "meet the relevant definitions of 'creditor.'" Id. "It is plausible to suppose that individuals holding these positions will, in the ordinary course of business, regularly participate in a credit decision." Id. As to the final individual defendant, Linda Newkirk, the State Executive Director of the Arkansas FSA office, we conclude the complaint

sufficiently alleges that she arranged for and set the terms of Johnson's loan in that it contends she "initiated administrative offsets and notified Plaintiff that they intended to intercept any federal payments due him and to apply those monies to his delinquent debt." See 15 U.S.C. § 1691a(e); 12 C.F.R. § 202.2(l); Curtis Johnson, 833 F.3d at 958 (concluding that allegations regarding Linda Newkirk were sufficient to infer her status as a creditor where they stated "she was the one to provide a letter denying Johnson's debt settlement applications"). Thus, the complaint includes sufficient allegations from which one could plausibly infer that the individual defendants qualified as creditors under the ECOA. In sum, the individual defendants have not demonstrated that Johnson failed to state an ECOA claim against them.[6]

## B.    Bivens Claims

Johnson argues that the district court erred in dismissing his Bivens claims against the individual defendants in their individual capacities because his constitutional claims are not barred by a comprehensive remedial scheme. We agree. "[T]he remedial scheme here—the Part 15d process—was not created at the explicit direction of Congress, but rather by the USDA through regulation. . . . When a remedial scheme is created entirely by regulation, it does not preclude a Bivens claim." Curtis Johnson, 833 F.3d at 959 (internal citation omitted) (citing Krueger v. Lyng, 927 F.2d 1050, 1055 (8th Cir. 1999) and Carpenter's Produce v. Arnold, 189 F.3d 686, 689 (8th Cir. 1999)).

---

[6]In a single sentence, the individual defendants also argue that the complaint does not allege that Johnson was qualified for credit that he was denied. See Rowe v. Union Planters Bank of Se. Mo., 289 F.3d 533, 535 (8th Cir. 2002) (stating that the elements of a prima facie ECOA claim include, inter alia, that plaintiff "applied for and was qualified for a loan"). Johnson alleges that he had previously been approved for an operating loan in March 2009 "as well as operating loans in previous years," leading to the reasonable inference that he was qualified when he applied again in 2010 and 2011.

## C.    Conspiracy Claims

Johnson appeals the district court's conclusion that his conspiracy claim against the individual defendants must be dismissed because the complaint "makes no factual allegations indicating an agreement between the defendants to violate his constitutional rights."  To state a claim for conspiracy under 42 U.S.C. § 1985(3), "the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement."  City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989).  The complaint includes no facts suggesting the individual defendants reached an agreement; instead, it relies on conclusory allegations that the defendants conspired "through mutual decisions and correspondence" and "acted in concert and with a mutual understanding."  Because Johnson was unable to "point[] to at least some facts which would suggest that appellees reached an understanding to violate [his] rights," he has not sufficiently alleged a conspiracy.  Jensen v. Henderson, 315 F.3d 854, 862 (8th Cir. 2002).

## III. Conclusion

For the foregoing reasons, we reverse the district court's dismissal of Johnson's ECOA claim as to all defendants and his Bivens claims as to the individual defendants in their individual capacities, and we affirm the district court's dismissal of the conspiracy claim.  We remand for further proceedings consistent with this order.

_____